UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:19-cr-00074-JAW-2 |
| | ) | |
| NICHOLAS KENNARD | ) | |

## ORDER ON DEFENDANT'S MOTION FOR DISCOVERY

Awaiting sentencing for his part in a drug trafficking conspiracy, a defendant seeks disclosure of his co-conspirators' presentence investigation reports, their criminal history categories, their designations as minor or minimal participants, their drug quantities, and a copy of a letter from the government detailing their cooperation. The Court denies each request. The Court concludes that this information is either publicly available or non-discoverable absent a special need, which the defendant fails to articulate.

## I. FACTS

Beginning in May 2017, Rodney LaCroix founded and ran a drug trafficking organization (DTO) in Maine to distribute fentanyl. *Presentence Investigation Report* ¶ 5 (ECF No. 135) (*Kennard PSR*). Other participants in the DTO included the Defendant, Nicholas Kennard, as well as Chad Clement, Alicia Donnell, Sadie Davis, Patrick Hanson, Katrina Steiner, Jessica Santos, Brianna Maberry, Louis Malloy, Justin Checkowiz, Justin LaCroix, and Corey Schutz. *Id.* Of these participants, the Government indicted only Mr. Kennard, Mr. LaCroix, and Mr. Clement; all other participants remained unindicted federally. *Id.* The Probation Office (PO) concluded

that Mr. Kennard was a customer of the DTO as well as a small, street-level distributor, and thus held a minor role in the conspiracy. *Id.* Regarding the two other participants, the PO assigned Mr. LaCroix an aggravating role, Mr. Clement a minimal role, and, even though none of the other participants was indicted federally, the PO described each of them as having an average role. *Id.* The PO recommended that the Court hold Mr. Kennard accountable for 439.7 grams of fentanyl. *Id.* ¶ 7.

## II.   PROCEDURAL HISTORY

On June 12, 2019, the Government charged Nicholas Kennard with two counts under a three-count superseding indictment.[1] *Superseding Indictment* (ECF No. 33); *Kennard PSR* ¶ 2. Count One charged Mr. Kennard and Mr. LaCroix with engaging in a conspiracy to distribute and to possess with intent to distribute controlled substances from May 1, 2017, to October 14, 2018, *Superseding Indictment* at 1, and Count Three charged Mr. Kennard and Mr. LaCroix with attempted possession with intent to distribute controlled substances on July 8, 2019. *Id.* at 3; *Kennard PSR* ¶ 2. On April 29, 2021, Mr. Kennard pleaded guilty to both counts. *Min Entry* (ECF No. 124); *Kennard PSR* ¶ 3. On August 13, 2021, Mr. Kennard filed this motion for discovery in anticipation of sentencing. *Def.'s Mot. for Disc.* (ECF No. 142) (*Def.'s Mot.*). On August 30, 2021, the Government filed its response in opposition. *Gov't's Opp'n to Def.'s Mot. for Disc.* (ECF No. 143) (*Gov't's Opp'n*). On September 7, 2021,

---

[1]   On April 17, 2019, a federal grand jury indicted only Rodney LaCroix in a two-count indictment. *United States v. LaCroix*, 1-19-cr-00074-JAW-1, *Indictment* (ECF No. 1). Count One charged Mr. LaCroix with engaging in a conspiracy from May 1, 2017 to October 14, 2018 to distribute fentanyl and Count Two charged him with possession with the intention to distribute fentanyl on October 14, 2018. *Id.*

Mr. Kennard replied to the Government's response. *Def.'s Reply to Gov't's Opp'n to Def.'s Mot. for Disc.* (ECF No. 144) (*Def.'s Reply*).

## III.   PARTIES' POSITIONS

### A.   Mr. Kennard's Motion for Discovery

Mr. Kennard seeks six categories of information.   First, the presentence investigation reports (PSR) for all co-conspirators named in Mr. Kennard's own PSR. *Def.'s Mot.* at 1.   Second, information as to how the Government treated co-conspirators not federally charged.   *Id.* at 1-2.   Third, information as to whether the co-conspirators named in Mr. Kennard's PSR have been considered "minor" or "minimal" participants.   *Id.* at 2.   Fourth, information regarding the criminal history categories of all co-conspirators identified in Mr. Kennard's PSR.   *Id.*   Fifth, information on the drug quantities for which all other co-conspirators are being held accountable.   *Id.*   Sixth, a copy of a letter filed by the Government addressing Mr. Clement's "substantial" assistance.   *Id.* at 2-3.

Mr. Kennard requests these items to ensure that "his sentence . . . [is] in conformity with the dispositions of [his co-conspirators]" under 18 U.S.C. § 3553(a)(6). *Id* at 6.   Mr. Kennard quotes *United States v. Reyes-Santiago*, 804 F.3d 453 (1st Cir. 2015), stating that "[i]n fashioning an appropriate sentence, judges are directed by statute to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* (quoting *Reyes-Santiago*, 804 F.3d at 467).   Mr. Kennard points to the First Circuit's discussion in *Reyes-Santiago* of "the unusual circumstance of a sentence that is substantively unreasonable . . . because of its substantial disparity with the sentences

given to co-defendants and the absence of any identified, supportable basis for the inconsistency." *Id.* at 7 (quoting *Reyes-Santiago*, 804 F.3d at 473). To support his argument, Mr. Kennard points to language in *Reyes-Santiago* that describes "significant differences in the criminal histories among the co-defendants," discusses Mr. Reyes-Santiago's criminal history category, and mentions the fact that "[m]ost of the others had less substantial criminal backgrounds." *Id.* (citing *Reyes-Santiago*, 804 F.3d at 472).

With respect to his co-conspirators' PSRs, Mr. Kennard acknowledges that, as a general rule, information contained in PRSs disclosed under Rule 32(d) of the Federal Rules of Criminal Procedure should generally not be disclosed to third parties. *Id.* at 4-5. However, pointing to Fourth and Eighth Circuit precedent, Mr. Kennard argues that the confidentiality of PSR information may be lifted in the "interest of justice." *Id.* at 4-5 (citing *United States v. McKnight*, 771 F.2d 388 (8th Cir. 1985); *United States v. Figurski*, 545 F.2d 389, 391 (4th Cir. 1976)). He says that when the information is "material," the district court "should examine it in camera and disclose only those portions, if less than all, of the report which meet the [materiality] test." *Id.* at 5 (quoting *Figurski*, 545 F.2d at 391). Here, Mr. Kennard argues that his requests are "in the interests of justice," *id.* at 6, and put him in a "better position to make a reasoned sentencing argument with appropriate rationale." *Id.* at 8.

### B.   The Government's Response

In response, the Government argues that PSR disclosures are "contrary to the public interest and may adversely affect the sentencing court's ability to obtain data

on a confidential basis." *Gov't's Opp'n* at 1-2 (quoting *United States v. Martinello*, 556 F.2d 1215, 1216 (5th Cir. 1997)).  Second, the Government asserts that Mr. Kennard's own "PSR . . . contains the information [he] needs to make his reasoned sentencing argument" and sufficiently explains how the Government assessed his role in the conspiracy and calculated drug quantities.  *Id.* at 2.  The Government further argues that PSRs do not exist for the unindicted co-conspirators and that any information related to the Government's charging decisions is non-discoverable work product.  *Id.* at 2 n.1.

Next, the Government contends that the criminal history designations of unindicted persons are non-discoverable, and moreover, criminal history is not relevant to role reduction determinations at sentencing.  *Id.* at 2-3.  The Government concludes by stating that Mr. Kennard "has identified no basis in either law or rule to suggest that he is entitled to the letter [regarding Mr. Clement's assistance], or that the letter should be made public."  *Id.* at 3.

### C.   Mr. Kennard's Reply

In reply, Mr. Kennard addresses five points made by the Government.  First, Mr. Kennard contends that all of the cases the Governments cites "to support non-disclosure, actually support[] disclosure via in camera process."  *Def.'s Reply* at 1.  Mr. Kennard "requests, at minimum, that the trial court sub judice review requested material on the named individuals and inform counsel as to the results of that review."  *Id.* at 2.

Second, Mr. Kennard seeks clarification as to whether the drugs attributed to Mr. LaCroix "relate[] to the present proceeding" and "whether any of the other named

individuals were the subject of federal prosecution in other jurisdictions." *Id.* at 2-3. Third, Mr. Kennard clarifies that "if no other drugs were attributed to Chad Clement than those identified in [his own] PSR, then [he] is satisfied on this point." *Id.* at 3. However, if "Chad Clement had more drugs attributed to him than those identified in defendant's PSR, then that information is vital to an assessment of defendant's relative culpability." *Id.* Mr. Kennard asserts that the parties can resolve the question of relative culpability "by comparing the amount of drugs attributed to Chad Clement in defendant's PSR with the amount of drugs attributed to Chad Clement in Chad Clement's PSR." *Id.*

Fourth, in response to the Government's argument that a person's designated role in a conspiracy is based on the instant facts rather than on criminal history designations, Mr. Kennard argues that "a person's criminal history and their designation within a conspiracy are in fact, 'facts,' utilized by courts to properly assess a defendant's role in a conspiracy." *Id.* at 3. As a result, Mr. Kennard asserts that access to other co-conspirators' criminal history categories will enable him to make a more informed sentencing argument. *Id.* at 3-4.

Finally, as to the assistance letter, Mr. Kennard submits that he did provide caselaw support for his request, namely *Reyes-Santiago*, for the proposition that "[i]n fashioning an appropriate sentence, judges are directed by statute to consider 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* at 4 (quoting *Reyes-Santiago*, 804 F.3d at 467). Mr. Kennard further cites *United States v. Kravetz*, 706

F.3d 47 (1st Cir. 2013), to support his claim that he has a vested interest in the judicial records requested and that the "salutary effects serve to support access . . . [to] the requested material." *Id.* at 4-5.

## IV.   LEGAL STANDARD

### A.   Disclosure of Presentence Investigation Report to Third Parties

The First Circuit wrote as recently as April 2021 that it has not yet considered a test for third-party access to PSRs.[2]  *United States v. Grullon*, 996 F.3d 21, 32 (1st Cir. 2021).  Absent precedent from the First Circuit, this Court has turned to other caselaw and concludes that a common theme emerges.[3]  At baseline "[PSRs] and supervision records are presumptively confidential and are generally not subject to disclosure to third parties," *Sawyer v. Purdue Pharm. Corp.*, 2012 U.S. Dist. LEXIS 35649, at *2 (D.N.H. Mar. 16, 2012) (quoting *United States v. Pike*, No. 2:09-cr-

---

[2]   *Grullon* is factually and procedurally different than the case at hand.  In *Grullon* the issue involved whether the defendant could gain access to an unredacted copy of the PSR of a co-conspirator who was the government's star witness against him.  *Grullon*, 996 F.3d at 27, 31-33.  The defendant already had access to redacted versions of the star witness' PSR but demanded an unredacted copy. *Id.* at 31-33.  The trial judge never ruled on the issue.  *Id.* at 31.  On appeal, the defendant argued that the district court erred in not allowing him unredacted access to the documents to impeach a trial witness.  *Id.* at 31.

The First Circuit noted in *Grullon* that the Supreme Court's opinion in *United States Department of Justice v. Julian*, 486 U.S. 1 (1988), is frequently cited for the proposition that courts are "'very reluctant to give third parties access to the PSR prepared for some other' defendant because they fear a 'chilling effect on the willingness of individuals to contribute information.'"  *Id.* (quoting *Julian*, 486 U.S. at 12).  However, the First Circuit observed that this statement is mere dicta and not binding because *Julian* dealt with a defendant's request for his own PSR under the Freedom of Information Act, rather than a third-party request.  *Id.; Julian*, 486 U.S. at 12-13.  The First Circuit acknowledged that other circuit courts have adopted the language from *Julian* in crafting their own tests for third-party PSR access but that "those circuits do not control our law."  *Id.*

[3]   Most PSR-disclosure disputes occur in the context of the defendant seeking a PSR for the purposes of impeachment at trial or because the report is believed to contain exculpatory material. *See e.g.*, *United States v. Molina*, 356 F.3d 269, 274 (2d Cir. 2004); *United States v. Corbitt*, 879 F.2d 224, 239 (7th Cir. 1989).  However, courts considering the disclosure of PSR information for sentencing purposes, as is the case here, cite the same caselaw and apply the same standard.  *See United States v. Harvie*, 890 F.3d 1130, 1133 (8th Cir. 2018).

7

001470JCM-GWF, 2011 U.S. Dist. LEXIS 104361, at *2 (D. Nev. Sept. 14, 2011) (citing FED. R. CRIM. P. 32(e))), in order to "ensure the free flow of information so that a district court has as complete a set of facts as is possible for fashioning an appropriate sentence." *McKnight*, 771 F.2d at 390; *see also United States v. Williams*, 624 F.3d 889, 895 (8th Cir. 2017); *United States v. Molina*, 356 F.3d 269, 274 (2d Cir. 2004). PSRs are intended to assist the judge in "understand[ing] the motivating forces underlying the defendant's conduct." *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989). Thus, "[g]iven the wide-ranging nature and purpose of the inquiry, and the relaxed evidentiary standards governing it, the presentence investigation is more closely akin in degree of intimacy to psychiatric or spiritual counseling than to the public, adversarial cast of the trial of the guilt phase of a criminal proceeding." *Id.*; *see also United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1170-72 (2d Cir. 1983) (providing a detailed explanation of the purpose of PSRs).

Even so, a PSR may nonetheless be disclosed to a third party when "the defendant demonstrates a 'compelling, particularized need for disclosure.'" *Sawyer*, 2012 U.S. Dist. LEXIS 35649 at *3 (quoting *Pike*, 2011 U.S. Dist. LEXIS 104361 at *2 (quoting *United States v. Gomez*, 323 F.3d 1305, 1308 (11th Cir. 2003))). This standard is often summarized by the term, "special need": when a third party seeks access to another's PSR, a showing of "special need" is required to gain access. *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 12 (1988); *United States v. Reep*, 764 F. App'x 336, 336 (4th Cir. 2019); *see also Williams*, 624 F.3d at 895 ("[T]he preferred approach is

for a case-by-case focus on whether the particular defendant has demonstrated a good faith belief that another's PSR contains exculpatory or impeachment material not available elsewhere (or other favorable evidence material to guilt or punishment)—a 'special need'"); *Molina*, 356 F.3d at 274; *Corbitt*, 879 F.2d at 238-39 ("disclosure is only appropriate where 'absolutely essential to effective presentation of a defense'") (quoting *United States v. Cyphers*, 553 F.2d 1064, 1069 (7th Cir. 1977)).  In other words, a PSR should not be disclosed to a third party "absent a demonstration that disclosure is required to meet the ends of justice." *McNight*, 771 F.2d at 390; *Figurski*, 545 F.2d at 391.  "Mere convenience or relevance will not suffice. . . . [T]he party seeking disclosure must demonstrate that the information sought is not available from other sources." *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 779 (6th Cir. 2016).

## B.   Sentencing Disparities

Mr. Kennard's discovery request is based on the premise that access to information about his co-conspirators will allow him to make better sentencing arguments and avoid unwarranted sentencing disparities.  "In fashioning an appropriate sentence, judges are directed by statute to consider 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.'" *Reyes-Santiago*, 804 F.3d at 467 (quoting 18 U.S.C. § 3553(a)(6)).  The First Circuit noted that §3553(a)(6) is "primarily aimed at national disparities, rather than those between co-defendants." *Id.* (quoting *United States v. Rivera-Gonzalez*, 626 F.3d 639, 648 (1st Cir. 2010)).  However, this does not preclude a defendant from successfully arguing that a sentence is "substantively

unreasonable because of the disparity with the sentence given to a co-defendant." *Id.* (quoting *United States v. Reverol-Rivera*, 778 F.3d 363, 366 (1st Cir. 2015)).

The First Circuit has, however, typically rejected sentencing disparity claims due to "material differences" between two seemingly similarly situated defendants. *Id.; United States v. Garcia-Sierra*, 994 F.3d 17, 40 (1st Cir. 2021); *United States v. Alexander*, 958 F.3d 1, 11 (1st Cir. 2020). To succeed on a sentencing disparity claim "a defendant must compare apples to apples." *Reyes-Santiago*, 804 F.3d at 467. Thus, "the myriad factors that come into play at sentencing make it difficult to isolate 'identically situated' co-defendants." *Id.* (highlighting various differences between co-defendants that may preclude a sentencing disparity argument). The resulting "rule of thumb" being that "a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences" but he may be entitled to resentencing if "two identically situated defendants receive[d] different sentences from the same judge." *Id.* (quoting *Rivera-Gonzales*, 626 F.3d at 648) (internal quotation marks omitted).

## V.   DISCUSSION

### A.   Other Unindicted Co-Conspirators

Under 18 U.S.C. § 3553(a)(6), a statutory factor a court considers in the imposition of a sentence is "the need to avoid unwarranted sentencing disparities among <u>defendants</u> with similar records who have been found guilty of similar conduct." *Id.* (emphasis supplied). The federal grand jury indicted only three of thirteen co-conspirators: Rodney LaCroix, Chad Clement and Nicholas Kennard. Mr. Kennard's request for information about unindicted co-conspirators misses the

10

statutory mark because none is a "defendant" under § 3553(a)(6).  These unindicted individuals would not have PSRs and their criminal histories, drug quantities, and other requested information could not be relevant to this Court's assessment of the need to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.*  The Court is aware of no authority for the proposition that it should authorize a defendant to discover information about the personal backgrounds and roles of unindicted individuals to assist the defendant in making proper sentencing arguments.

### 1.    The Government's Charging Decisions

Despite his tenuous claim for information about unindicted co-conspirators, Mr. Kennard presses the notion that he has a right to explore why the Government made its prosecutorial decisions, electing to federally indict only three of the thirteen listed co-conspirators.  *Def.'s Mot.* at 1-2.  The Court rejects this request because it is not authorized by the criminal rules, would violate protections of prosecutorial work product, and would impinge on well-known precepts of prosecutorial discretion.

Turning first to the criminal rules, Rule 16 of the Federal Rules of Criminal Procedure states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . papers, documents . . . data . . . or copies or portions of any of these, if the item is within the government's possession, custody, or control and:

> (i)     The item is material to preparing the defense;
> (ii)    The government intends to use the item in its case-in-chief at trial; or
> (iii)   The item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(1)(E).  However, Rule 16 expressly "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with prosecuting the case." FED. R. CRIM. P. 16(a)(2).  In essence, this rule prohibits a defendant from otherwise "examin[ing] Government work product in connection with his case." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

These Rules stem from the precept that "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *Id.* at 464 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).  Because United States Attorneys are "designated by statute as the President's delegates to help him discharge his constitutional responsibilit[ies]," they have a great deal of "latitude." *Id.* (citing U.S. Const., Art. II, § 3; 28 U.S.C. §§ 516, 547).  Thus, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).  Courts are "properly hesitant to examine the decision whether to prosecute," *id.* at 465 (quoting *Wayte*, 470 U.S. at 608), because of the "relative competence of prosecutors" and a desire to "not impair the performance of a core executive function," create prosecutorial delays, or "undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* (quoting *Wayte*, 470 U.S. at 607).  Indeed, to challenge prosecutorial discretion on the basis of selective prosecution, a party must present "clear evidence"

that a "prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* at 464-65 (quoting *Wayte*, 470 U.S. at 608).

Here, information on how the Government treated Mr. Kennard's co-conspirators falls squarely within the category of government information not subject to disclosure under Rule 16(a)(2). The Government's charging decisions fit well within the type of "work product" kept in reports, memoranda, and other internal documents. Furthermore, principles of judicial deference to prosecutorial discretion make inappropriate Mr. Kennard's discovery requests about the prosecutor's decision-making.

The Supreme Court has articulated the importance of deferring to prosecutors in their charging decisions unless there is some obvious constitutional violation in the charging decision, and Mr. Kennard alleged no such impropriety or equal protection violation in his case that would justify the disclosure of the Government's charging decisions as to his unindicted co-conspirators. Instead, Mr. Kennard merely seeks this information to enhance his sentencing argument, which is not enough to overcome the policy presumption against disclosure and Rule 16(a)(2)'s bar against discovery of internal government work product.

## B.   Information About the Two Other Defendants

To the extent that Mr. Kennard wishes to make an unwarranted sentencing disparity argument about similarly situated defendants, the only two persons whose information is even arguably relevant are Rodney LaCroix and Chad Clement because they are the only potentially similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). Mr. Kennard has substantial information about both Mr. LaCroix and

Mr. Clement that significantly undercuts his asserted need for further information about these two individuals.

### 1.      Rodney LaCroix

Rodney LaCroix was indicted on April 17, 2019 and charged with engaging in a conspiracy to distribute 400 grams or more of fentanyl from May 1, 2017, to October 14, 2018, and with the possession of 400 grams or more of fentanyl with the intention to distribute it. *United States v. LaCroix*, 1-19-cr-00074-JAW-1, *Indictment* (ECF No. 1). Each count alleged that the quantity of fentanyl exceeded 400 grams. *Id.* On June 12, 2019, a federal grand jury issued a superseding indictment against Mr. LaCroix and Mr. Kennard. *LaCroix*, 1-19-cr-00074-JAW-1, *Superseding Indictment* (ECF No. 33). Count One added Mr. Kennard to the conspiracy allegation; Count Two alleged that on October 14, 2018, Mr. LaCroix had possessed more than 400 grams of fentanyl with the intention to distribute it; and Count Three alleged that on July 8, 2018, Mr. Kennard and Mr. LaCroix attempted to distribute 40 grams or more of fentanyl. *Id.*

Significantly for Mr. LaCroix, the superseding indictment also alleged that because of a prior federal controlled substance conviction, he was subject to a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). *Id.* Section 841(b)(1)(A) addresses defendants who are charged with the distribution of 400 grams or more of fentanyl. 21 U.S.C. § 841(b)(1)(A)(vi). But more importantly, § 841(b)(1)(A)(viii) provides that "[i]f any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such

person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(A)(viii).

On November 20, 2020, the Government filed a Prosecution Version and an Agreement to Plead Guilty (with Stipulations, Appeal Waiver, Cares Act Waiver, and Version of the Offense). *LaCroix*, 1-19-cr-00074-JAW-1, *Prosecution's Version of the Offense* (ECF No. 91); *Agreement to Plead Guilty (with Stipulations, Appeal Waiver, Cares Act Waiver, and Version of the Offense)* (ECF No. 90) (*LaCroix Plea Agreement*). These documents contain a wealth of information about Mr. LaCroix, including a detailed description of his offense conduct, the drug quantity of at least 400 grams of fentanyl, his prior federal controlled substance offense conviction, the mandatory minimum prison term of fifteen years, and an appeal waiver of 188 months. On December 16, 2020, Mr. LaCroix pleaded guilty to all three charged crimes. *LaCroix*, 1-19-cr-00074-JAW-1, *Min. Entry* (ECF No. 93).

Finally, the docket reflects that on June 17, 2021, the Court imposed a sentence on Mr. LaCroix consistent with the mandatory minimum sentence of 180 months, ten years of supervised release, a $300 special assessment, and no fine. *LaCroix*, 1-19-cr-00074-JAW-1, *J.* (ECF No. 130).

## 2. Chad Clement

On January 22, 2020, the Government filed an information against Chad Clement, which contained one count, an allegation that Mr. Clement engaged in the distribution of 40 grams or more of fentanyl on July 8, 2018. *United States v. Clement*, 1:20-cr-00011-JAW, *Information* (ECF No. 1). With the filing of the information, the Government filed a plea agreement and a cooperation agreement. *Clement*, 1:20-cr-

00011-JAW, *Agreement to Plead Guilty (With Stipulations and Appeal Waiver)* (ECF No. 4) (*Clement Plea Agreement*); *Cooperation Agreement* (ECF No. 6).[4]  Again, these documents contain a significant amount of information about the case against Mr. Clement.  Mr. Clement faced a five-year mandatory minimum prison term.  *Clement Plea Agreement* at 1-2.  The parties agreed that they would recommend to the Court that Mr. Clement was a minimal participant and should receive a four-level reduction in the guideline calculations, was eligible for a safety-valve reduction (subject to confirmation of his criminal record),[5] and had accepted responsibility for his offense. *Id.* at 2-3.  Mr. Clement agreed not to challenge his guilty plea or conviction or a sentence that did not exceed 37 months of incarceration.  *Id.* at 3.

The docket in Mr. Clement's case reveals that on February 18, 2021, after he entered a guilty plea, he was placed on bail on the condition that he participate in a drug treatment program.  *Clement*, 1:20-cr-00011-JAW, *Order Setting Conditions of Release* (ECF No. 16).  On June 1, 2020, the Magistrate Judge granted in part and denied in part the Government's motion for detention, ordering that the parties explore in-patient residential drug treatment for Mr. Clement.  *Clement*, 1:20-cr-00011-JAW, *Order on Mot. to Revoke Bail* (ECF No. 28).  Mr. Clement was arrested on July 7, 2020 and ordered detained for his failure to comply with the terms of his

---

[4]     The cooperation agreement was initially sealed, but after Mr. Clement was released based on his time-served sentence, the Court unsealed his cooperation agreement on April 21, 2021.  *See Clement*, 1:20-cr-00011-JAW, *Order* (ECF No. 62); *Oral Order* (ECF No. 59).

[5]     The PO disagrees with parties' recommendation that the safety valve provisions apply to Mr. Kennard.  *PSR* at 17 n.3.

release by failing to participate in drug treatment as required by his bail conditions. *Clement*, 1:20-cr-00011-JAW, *Order on Mot. to Revoke Bail* (ECF No. 43).

On March 25, 2021, the Government moved the Court to depart downward pursuant to U.S.S.G. § 5K1.1 based on Mr. Clement's substantial assistance. *Clement*, 1:20-cr-00011-JAW, *Mot. for Downward Departure* (ECF No. 55). On March 29, 2021, the Court imposed a time served sentence on Mr. Clement, three years of supervised release, a $100 special assessment, and no fine. *Clement*, 1:20-cr-00011-JAW, *J.* (ECF No. 60). Mr. Kennard's PSR confirms that Mr. Clement received a sentence of 266 days of incarceration. *Kennard PSR* at 1.

### 3.   Nicholas Kennard, Rodney LaCroix and Chad Clement

Comparing Mr. Kennard and Rodney LaCroix and Mr. Kennard and Chad Clement leads to the conclusion that neither of these two defendants is similarly situated to Mr. Kennard. Mr. LaCroix, as the founder and leader of the DTO, is obviously dissimilar to Mr. Kennard because, unlike Mr. Kennard, he was subject to and he received a mandatory minimum sentence of 180 months of incarceration.

Mr. Clement is also dissimilar to Mr. Kennard. Unlike Mr. Kennard, Mr. Clement was not charged with being part of the conspiracy; he was charged with one discreet possession of fentanyl with the intent to distribute it. More significantly, unlike Mr. Kennard, Mr. Clement entered into a formal cooperation agreement with the Government and the Government filed a § 5K1.1 motion to reduce his sentence based on his cooperation. As reflected in his Plea Agreement, Mr. Clement was eligible for safety valve treatment and, according to Mr. Kennard's PSR, the parties are recommending that he be found safety valve eligible. Therefore, although there

are more similarities between Mr. Kennard's case and Mr. Clement's case, the differences in their charges and in Mr. Clement's formal cooperation make them dissimilar for sentencing purposes.

The Court approaches Mr. Kennard's demand for information about Mr. LaCroix and Mr. Clement with the backdrop that neither defendant about whom Mr. Kennard is seeking discovery is facially similar to Mr. Kennard.

## C.   Discovery of Presentence Reports

Citing concern over potential sentencing disparities, Mr. Kennard first requests the PSRs of all co-conspirators mentioned in his own PSR. As noted earlier, there is no basis for Mr. Kennard to obtain PSRs for unindicted co-conspirators since there is no indication that any PSRs exist for them. Section 3552 states that a "probation officer shall make a presentence investigation of a defendant . . . before the imposition of sentence." 18 U.S.C. § 3552. PSRs are only prepared for persons who have been found or pleaded guilty to a federal crime, which necessarily means that a person has first been charged. Mr. Kennard failed to explain how the Court could compel disclosure of PSRs for unindicted co-conspirators, especially since the Court has no reason to believe that any such PSRs exist.

The Court turns to whether Mr. Kennard may obtain the PSRs for Rodney LaCroix and Chad Clement. As noted earlier, the Court treats both these PSRs as presumptively confidential, generally not subject to disclosure to third persons, including Mr. Kennard, and discoverable only when the person seeking the PSR demonstrates a special need for it.

Mr. Kennard argues that access to the PSRs of his co-conspirators is in the interest of justice because it will enable him to better argue his sentence and prevent sentencing disparities. *See Def.'s Mot.* at 6, 8. The Court disagrees. "The fact that a defendant is one member of a criminal conspiracy, or shares common offense conduct with another defendant, does not automatically create a 'special need' to release a PSR in order to allow disparity arguments under 18 U.S.C. § 3553(a)(6)." *Williams*, 624 F.3d at 895.

First, especially in light of the significant amount of evidence available to him about Mr. LaCroix and Mr. Clement, Mr. Kennard has not met his burden of showing a "special need" or that disclosure of the PSRs is necessary under the "ends of justice" standard. Mr. Kennard does not point to specific portions of any one PSR, let alone any specific topics of interest, that would present questions as to his sentence that he cannot raise without that information. Although Mr. Kennard's request specifies "portions" of the PSRs, the request is, in essence, a request for unfettered access to all potentially relevant information. In this regard, Mr. Kennard's request is neither "particularized" nor "compelling."

Courts universally recognize that PSRs are highly sensitive personal documents that should presumptively be kept confidential absent good cause, and Mr. Kennard has not given the Court a reason to overcome this presumption of confidentiality. In addition to the nature and circumstances of the offenses, PSRs routinely set forth in detail defendants' history and characteristics, including information about their childhood, their parents and siblings, instances of physical

19

or sexual abuse, drug and alcohol abuse, education, employment, financial status, and other otherwise private information, and, in supplying or confirming this information, the defendants are obligated to be truthful and forthcoming to the PO. As a defendant supplies his or her private information because the law requires it, a mandatory transfer of that otherwise private information to another defendant should be ordered only when the seeker demonstrates his special need for the material. One aspect of this analysis, therefore, is whether there is any other way to access the information necessary for a defendant's sentencing arguments.

Mr. Kennard's only justification is that granting his request for access would bolster his sentencing argument and help to minimize sentencing disparities. However, this argument is not "particular" to Mr. Kennard. Every defendant shares the desire to have a strong argument at sentencing, every defendant is subject to the same requirements under 18 U.S.C. § 3553, and in all cases the Court is obliged to "avoid unwarranted sentencing disparities." To grant Mr. Kennard's request would be to set a standard that defendants could have near blanket access to their co-conspirators' PSRs without a showing of specific need, a result contrary to the purpose of PSRs as articulated by most circuit courts. *See e.g.*, *William*, 624 F.3d at 895; *United States v. Miller*, 387 F. App'x 949, 953 (11th Cir. 2010) (finding no abuse of discretion where the district court denied access to a co-conspirators PSR because the defendant "failed to articulate with particularity any compelling need for the information contained therein").

Second, the First Circuit's decision in *Reyes-Santiago* does not compel a different conclusion. To begin, the Court notes that the *Reyes-Santiago* Court observed that "[w]e have routinely rejected disparity claims." *Id.* 804 F.3d at 467. While Mr. Kennard is correct that sentencing courts must consider whether sentences among co-defendants are disproportionate, the First Circuit emphasizes that "disparity" is "primarily aimed at national disparities, rather than those between co-defendants." *Id.* The First Circuit acknowledges that disparities may occur among co-defendants but notes that this is the exception, not the rule, as it is rare to find "identically situated" defendants. *See id.*

Moreover, even if Mr. Kennard were entitled to his co-conspirators' PSRs, that does not mean he would be entitled to the same sentences they received. *See Alexander*, 958 F.3d at 11 (quoting *Rivera-Gonzalez*, 626 F.3d at 648 ("[A] defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences")). In fact, the First Circuit has rejected defense arguments that "any dissimilarities between [a defendant] and his coconspirators should not matter." *United States v. Romero*, 906 F.3d 196, 212 (1st Cir. 2018) (distinguishing *Reyes-Santiago*, explaining that the First Circuit found an unwarranted disparity there because drug guidelines that should have been applied equally to all defendants were uniquely applied to the defendant, and the district court considered a factor in the defendant's case it previously said it would not consider).

Finally, as the Court rejects Mr. Kennard's discovery request, it also rejects any request to hold an in camera viewing of the relevant PSRs. Other circuits have

consistently held that a defendant is not entitled to an in camera hearing without some initial showing that the court is likely to discover evidence that is unavailable elsewhere.  *See e.g.*, *Molina*, 356 F.3d at 275 ("[N]o *in camera* review of a co-defendant's PSR is required without a threshold showing of a good faith belief that a co-defendant's PSR contains exculpatory evidence not available elsewhere"); *United States v. Allen*, 716 F.3d 98, 105 (4th Cir. 2013) (upholding the district court's refusal to hold an *in camera* review because the defendant had not offered a sufficiently compelling reason to do so).  Mr. Kennard offered no specific reasons to justify an in camera review.

### D.   Information on the Status of Co-Conspirators as Minor or Minimal Participants and Co-Conspirators' Criminal History Designations

Mr. Kennard requests the criminal history designations of his co-conspirators and information as to their designations as "minor" or "minimal" participants, but the Court summarily rejects this request as well.  As noted earlier, Mr. Kennard already knows that Mr. LaCroix was previously convicted and sentenced in federal court for a controlled substance crime and that Mr. Clement qualified for the safety valve under U.S.S.G. § 2D1.1(b)(18).  Mr. Kennard also knows that the parties agreed to recommend a minimal participant, four-level role reduction for Mr. Clement. *Clement Plea Agreement* at 2.  How more specific information would benefit Mr. Kennard is unclear.

While PSRs, which as noted above are presumptively confidential, encompass this information, much of the same information is also publicly available.  *See United*

*States v. Spotted Elk*, 548 F.3d 641, 672 (8th Cir. 2008) (stating that "co-conspirators' offense characteristics, criminal history, and sentences" are obtainable from "publicly available sources"); *Williams*, 624 F.3d at 895 ("The government's sentencing memorandum and supplement, [defendant's] sentencing memorandum, the district court's minute entry of the sentencing, and [defendant's] judgment—all publicly available—discuss[] much of [the previously sentenced co-defendant's] offense conduct, criminal history, and guidelines calculation").

At sentencing, the Court is required to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). A sentencing explanation is sufficient if it "specifically identif[ies] some discrete aspect of the defendant's behavior and link[s] that aspect to the goals of sentencing." *United States v. Rivera-Gonzalez*, 626 F.3d 639, 646-47 (1st Cir. 2010) (quoting *United States v. Vazquez-Molina*, 389 F.3d 54, 58 (1st Cir. 2004), *vacated on other grounds*, 544 U.S. 946 (2005)). In compliance with the § 3553(c) requirement, the sentencing judge will identify, on the record, the defendant's criminal history category as well as any enhancements or decreases the defendant received as a result of his role in the conspiracy.

Because this information is stated in open court, it is a matter of public record accessible to Mr. Kennard. Mr. Kennard is therefore not entitled to discovery of this information because he has not shown that his current right of access to publicly available information is inadequate for his purposes. *See Spotted Elk*, 548 F.3d at 672; *In re Morning Song Bird Food Litigation*, 831 F.3d at 778 ("[T]he party seeking

disclosure must demonstrate that the information sought is not available from other sources"); *United States v. Tennison*, No. 17-20038-14-DDC, 2020 U.S. Dist. LEXIS 16281, at *7 (D. Kan. Jan. 30, 2020) ("[Defendant] can reference concerns about sentencing disparities without knowing the precise contours of [his codefendant's] total offense level or criminal history category. The court can access that information and thus can evaluate [defendant's] argument—if he makes the argument—without precise reference to offense level or criminal history"). Not only does Mr. Kennard have access to a great deal of publicly available information through the case docket, but the Seventh and Eighth Circuits have stated that "it is not unreasonable to require a third party desiring information about a defendant's sentencing proceedings to attend the sentencing hearings."[6] *Spotted Elk*, 548 F.3d at 672; *see Corbitt*, 879 F.2d at 240 n.20; *United States v. Green (In re Siler)*, 571 F.3d 604, 611 (6th Cir. 2009) ("[W]hen virtually everything in the presentence report [was] available from other sources, there is no special need for access") (citations and internal punctuation omitted).

### E.    Drug Quantities for Each Member of the Conspiracy

Mr. Kennard originally requested information on the drug quantity that each of his codefendants was held accountable for. *Def.'s Mot.* at 2. However, in his reply he states that he is satisfied with the information on drug quantities contained in his own PSR if "no other drugs were attributed to Chad Clement than those identified in

---

[6]    Even if the Court granted his request for discovery, Mr. Kennard would only be entitled to information about federally indicted co-conspirators, as criminal history designations and decreases in offense level are only determined for charged persons who either pleaded or were found guilty.

[Mr. Kennard's] PSR." *Def.'s Reply* at 3. In essence, Mr. Kennard requests this information so he can compare the "amount of drugs attributed to Chad Clement in [his] PSR with the amount of drugs attributed to Chad Clement in Chad Clement[']s PSR" to assess his relative culpability. *Id.*

Mr. Kennard's arguments are flawed. First, the issue is the drug quantity properly attributable to him, not to someone else. The Kennard PSR concludes that he was involved with the LaCroix DTO for "three-or-four weeks total, ending on July 8, 2018." *Kennard PSR* ¶ 6. This three to four-week period is consistent with the Prosecution Version, which Mr. Kennard admitted was true at his Rule 11, namely, that he "intentionally joined and participated in the conspiracy from about June 1, 2018 through July 8, 2018." *Prosecution Version* at 1 (ECF No. 118) (*Kennard Prosecution Version*). Calculating the drug quantity attributable to Mr. Kennard, the PO began with the 389.7 grams of fentanyl that the authorities seized from Mr. Kennard and Mr. Clement on July 8, 2018. *Kennard PSR* ¶ 6. This is very close to the amount Mr. Kennard admitted at the Rule 11 hearing he possessed on July 8, 2018. *Kennard Prosecution Version* at 2 ("The package contained approximately 389 grams of fentanyl"); *Min Entry* (ECF No. 124).

In addition to the 389.7 grams of fentanyl, the PO holds Mr. Kennard accountable for five grams per transaction, twice weekly, for the five weeks from June 1, 2018, to July 8, 2018, for a total of an additional fifty grams of fentanyl. *Kennard PSR* ¶ 7. Adding the 50 grams with the amount seized on July 8, 2018, results in a total of 439.7 grams of fentanyl. *Id.* The 439.7 grams of fentanyl translated into a

base offense level of 30 — at least 400 grams and less than 1.2 kilograms. *Id.* ¶ 13 (citing U.S.S.G. § 2D1.1(a)(5), (c)(5)). Put differently, taking the 389 grams of fentanyl as a given, to cross into the base offense level of 30, Mr. Kennard would have to have distributed less than 10.3 grams of fentanyl during the previous five weeks leading up to July 8, 2018, a quantity at odds with the PO's determination that he possessed five grams twice per week for five weeks.

The Court is baffled as to why Mr. Kennard feels he needs to know the drug quantity the PO attributed to Chad Clement. The Kennard PSR asserts that Mr. Kennard did not know Mr. Clement before July 8, 2018, when Rodney LaCroix sent Mr. Kennard to pick up drugs from Mr. Clement and Alicia Donnell. *Kennard PSR* ¶ 6. The PO ended its calculation of the drug quantity attributable to Mr. Kennard's involvement in the LaCroix DTO on July 8, 2018. *Id.* ¶ 7. Thus, Mr. Clement's and Mr. Kennard's common participation in the LaCroix DTO took place only on July 8, 2018, and both Mr. Kennard and Mr. Clement admitted prosecution versions that confirm the drug quantity seized on July 8, 2018 was 389 grams of fentanyl. *Compare Clement*, 1:20-cr-00011-JAW, *Prosecution Version of the Offense* at 1 ("Inside of the box were three bags containing approximately 389 grams of fentanyl"); *with Kennard Prosecution Version* at 2 ("The package contained approximately 389 grams of fentanyl"). Accordingly, Mr. Kennard has not articulated why any drug quantity involving Mr. Clement before or after July 8, 2018, (if there was any) would have any relevance to the drug quantity for which Mr. Kennard should be held responsible.

Importantly, Mr. Kennard is not now claiming that these PO drug quantity calculations of the fentanyl properly attributable to him are inaccurate.  If, in fact, these drug quantities are accurate, then the Court is confused as to why the PO's assessment of Chad Clement's drug quantity should affect his.

Finally, as noted before, the drug quantity attributed to Mr. Kennard's co-defendants, is similarly a matter of public record as the Court reads this information into the record during the imposition of sentence for every defendant when it performed the guideline calculations.  As discussed above, Mr. Kennard offers no evidence that this publicly available information in insufficient for his purposes.

###### F.    Copy of the Government's Letter Filed with the Court

Finally, Mr. Kennard requests a copy of the Government's letter detailing Chad Clement's assistance.  *Def.'s Mot.* at 2.  The Court rejects this request.

The Notes of the Advisory Committee for the Rules of Criminal Procedure contemplates that certain documents are automatically sealable and "shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access."  FED. R. CRIM. P. 49.1, *Notes of Advisory Committee.*  Among the documents that the court should presumptively not disclose are "motions for downward departure for substantial assistance, [and] plea agreements indicating cooperation."  *Id.*  Mr. Kennard seeks a letter the Government referenced in its § 5K1.1 motion for downward departure in the Chad Clement case. The letter, authored by a federal prosecutor, details the Government's assessment of the § 5K1.1 factors, including the nature and extent of Mr. Clement's cooperation.

Thus the requested letter falls squarely within this category of sensitive documents that are presumptively non-discoverable.

In his reply, Mr. Kennard correctly notes that the First Circuit's decision in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), stands for the proposition that there is a "common law right of access . . . to documents that constitute 'judicial records,' which are defined as 'materials on which a court relies in determining the litigants' substantive rights.'" *United States v. Nuñez*, No. 1:11-cr-00205-JAW-6, 2021 U.S. Dist. LEXIS 52759 (D. Me. Mar. 22, 2021) (citing *Kravetz*, 706 F.3d at 54). However, Mr. Kennard's reliance on this case is misplaced, because "'[t]hough the public's right of access is vibrant, it is not unfettered.'" *Kravetz*, 706 F.3d at 59 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). The *Kravetz* court set forth the following framework:

> When addressing a request to unseal, a court must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case, keeping in mind that "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access."

*Id.* (quoting *In re Providence Journal Co., Inc.*, 293 F.3d 1, 10 (1st Cir. 2002)). "Third-party privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access.'" *Id.* at 62 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)).

Applying this framework here, the Court notes that the § 5K1.1 letter Mr. Kennard seeks contains highly sensitive information related to Mr. Clement's case and his cooperation with the Government. Under Federal Rule of Criminal Procedure

49.1, the Court has the authority to seal motions for downward departure for substantial assistance. FED. R. CRIM. P. 49.1 advisory committee's note to 2007 adoption ("The following documents shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access: sealed documents (*e.g.* motions for downward departure for substantial assistance, plea agreements indicating cooperation"). This District's local rules also mandate the sealing of motions for cooperation departures. D. ME. LOC. R. 132 (g)(1)-(2). While the danger to a cooperating defendant may lessen after the defendant has served his sentence to a point where the balance of the right of public access and privacy concerns is often struck in favor of disclosing the fact of cooperation, as occurred in Chad Clement's case, the details of that cooperation still place the individual at risk and § 5K1.1 letters would provide documentary proof of the specifics of that cooperation, often including the who, when and what of a defendant's discussions with law enforcement. The continued nondisclosure of this § 5K1.1 letter is therefore warranted.

In *United States v. Green*, addressing the sealing of PSRs, the Sixth Circuit described the policy underlying the lack of public access to PSRs, a rationale equally applicable, if not more so, to § 5K1.1 letters:

> [T]he common law right of access to court records does not cover the defendants' PSRs. The scope of any such common law right is left to the "sound discretion of the trial court." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978). In practice, PSRs are not treated as public records within the judicial system, but are handled and marked as "confidential reports." *United States v. Martinello*, 556 F.2d 1215, 1216 (5th Cir. 1977); *see also United States v. McKnight*, 771 F.2d 388, 390 (8th Cir. 1985). . . . Contrary to the Silers' contentions,

courts have given reasons why PSRs are not subject to a common law presumption of court openness. For instance, the Supreme Court in *Julian* noted that disclosure would have "a chilling effect on the willingness of various individuals to contribute information" and recognized "the need to protect the confidentiality of the information contained in the report." 486 U.S. at 12; *see also United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir. 1995); *United States v. Corbitt*, 879 F.3d 224, 232 (7th Cir. 1995); *United States v. Greathouse*, 484 F.2d 805, 807 (7th Cir. 1973).

571 F.3d at 610. In short, the Sixth Circuit wrote, "PSRs are not public documents." *Id.* Applying this reasoning to § 5K1.1 letters, this Court concludes that the right of public access described in *Kravetz* does not apply to § 5K1.1 letters.

Finally, Mr. Kennard has not adequately articulated a persuasive reason for disclosure of this letter beyond his speculative and blanket assertion that it may assist his sentencing argument. However, this justification does not overcome the presumption that such a sensitive document should not be disclosed. The mere fact that a document referencing the letter was unsealed does not mean that the underlying letter may also be unsealed because the letter itself contains highly prejudicial information that may put Mr. Clement at risk.

## VI.   CONCLUSION

The Court DENIES Mr. Kennard's Motion for Discovery (ECF No. 142).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2021